

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEMAT PULOTOV,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES et al,<br><br>    Defendants. | CIVIL ACTION<br>NO. 16-6067 |

**OPINION**

**Slomsky, J.**                                                                                                                                                    **February 16, 2018**

## I.    INTRODUCTION

Plaintiff Pulotov Nemat[1] brings this action for a declaratory judgment under 28 U.S.C. §§ 2201-2202 and a petition for a writ of mandamus under 5 U.S.C. § 701 and 28 U.S.C. § 1331 against the following Defendants: United States Citizenship and Immigration Services ("USCIS"); Executive Office for Immigration Review ("EOIR"); former Secretary of the Department of Homeland Security Jeh Johnson; former USCIS director Leon Rodriguez; former Attorney General of the United States Loretta Lynch; and former EOIR director Juan Osuna. (Doc. No. 1.)

In his first Cause of Action, Plaintiff alleges a violation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101 et. seq. and the Due Process Clause of the Fifth Amendment. (Id. at 20.) In his second Cause of Action, Plaintiff alleges a violation of the Administrative

---

[1] In his Complaint and Motion for Summary Judgment, Plaintiff is referred to as "Pulotov Nemat." (Doc. Nos. 1, 13.) However, the Electronic Case File (ECF) system lists Plaintiff's name as Nemat Pulotov and the case is captioned as "Nemat Pulotov v. U.S. Citizenship and Immigration Services, et al." For the purposes of this Opinion, the Court will refer to Plaintiff in accordance with the names used in his Complaint and Motion for Summary Judgment.

1

Procedure Act ("APA"), 5 U.S.C. § 701 et. seq; specifically, the improper denial of his employment authorization document ("EAD") application and the lack of a meaningful opportunity to contest the denial. (Id. at 21.)

Before the Court are the parties' cross-motions for summary judgment. Plaintiff moves for summary judgment under the APA, asserting that the denial of his EAD by Defendants was arbitrary and capricious. (Doc. No. 13 at 18.) Defendants filed a Response in Opposition (Doc. No. 16) and their own Motion for Summary Judgment (Doc. No. 14). In the Motion, Defendants assert that Plaintiff was ineligible for employment authorization because he agreed to administratively close his removal proceedings, pausing the accrual of the mandatory 180 days required before applying for an EAD. (Id.)

On October 12, 2017, the Court held a hearing on the cross-motions for summary judgment. The motions are now ripe for disposition. For reasons that follow, the Court will deny Plaintiff's Motion for Summary Judgment[2] (Doc. No. 13) in its entirety and will grant Defendants' Motion for Summary Judgment (Doc. No. 14) in part, only on the due process claim arising under the Fifth Amendment. All claims arising under the APA are dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3).

## II.   BACKGROUND

Plaintiff is a national and citizen of Uzbekistan. (Doc. Nos. 13 ¶ 12, 14 at 5.) He arrived in the United States on or about January 21, 2006, on a non-immigrant visa. (Doc. No. 13 ¶ 13.)

---

[2]   In deciding these Motions, the Court has considered the following documents: the Complaint and attached exhibits (Doc. No. 1); the Administrative Record (Doc. No. 9); Plaintiff's Motion for Summary Judgment (Doc. No. 13); Defendants' Motion for Summary Judgment (Doc. No. 14); Defendants' Statement of Undisputed Facts in Support of a Motion for Summary Judgment (Doc. No. 15); Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment and Memorandum (Doc. No. 16); Defendants' Separate Statement in Response to Plaintiff's Statement of Material Facts (Doc. No. 17); and the arguments of counsel at the October 12, 2017 hearing on the cross-motions for summary judgment. (See Doc. No. 22.)

His visa expired on January 25, 2006, four days after his arrival. (Doc. No. 15 ¶ 3.) On or about October 7, 2014, he was placed in removal proceedings by Immigration and Customs Enforcement of the United States Department of Homeland Security ("ICE") because he overstayed his visa. (Doc. No. 13 ¶ 12, Doc. No. 14 at 1.)

On or about May 6, 2015, Plaintiff filed Form I-589, which is an Application for Asylum and for Withholding of Removal, with the United States Immigration Court. (Doc. No. 13 ¶ 13.) On or about September 2, 2015, Plaintiff, who was represented by counsel, appeared before the Philadelphia Immigration Court of the EOIR as part of his removal proceedings. (Id., Doc. No. 14 at 5.) An attorney from ICE was also present. (Doc. No. 14 at 5.) During these types of proceedings, the immigration judge is empowered to adjudicate the asylum claim and the request for withholding removal. (Id. at 7.) Here, upon the joint request of Plaintiff and ICE, Plaintiff's removal proceedings were administratively closed by the presiding immigration judge.[3] (Doc. No. 13 ¶ 12.)

On July 14, 2016, Plaintiff filed Form I-765, which is an Application for Employment Authorization for foreign nationals to obtain an employment authorization document. (Id. ¶ 15.) On September 16, 2016, Defendant USCIS denied Plaintiff's EAD application under 8 C.F.R. § 274a.12(c)(8). (Doc. No. 14 at 6.) In denying Plaintiff's application, Defendant USCIS stated:

---

[3] At the October 12, 2017 hearing on the cross-motions for summary judgment, Plaintiff's counsel stated that during the September 2, 2015 appearance before the immigration judge, the parties agreed to administratively close Plaintiff's removal proceedings "because, obviously, to keep his case going he would need to pay his attorney, he would need to retain a country conditions expert, he would need to obtain supporting documents from his home country. So he would have to expend resources from his part." (Tr. of Mot. to Dismiss Hr'g, 6:10-15.) Plaintiff's counsel further asserted that Defendant "would also have to expend valuable resources on trying to remove [Plaintiff], who has no criminal history and does not present a priority for removal." (Id. at 6:16-19.)

3

> USCIS records indicate that your Application for Asylum and Withholding of Removal, Form I-589, filed on May 06, 2015, was administratively closed by the Immigration Judge on September 02, 2015. The Immigration Judge stopped the asylum application's processing clock[4] with the administrative closure of your asylum case. As of the date of this letter, the Immigration Judge has not restarted the clock in regard[s] to processing of your asylum application. Therefore, you are not eligible for employment authorization under 8 C.F.R. § 274a.12(c)(8), as the required 180 days[5] have not elapsed. For information regarding the asylum processing clock, contact the Immigration Court that has jurisdiction over your proceedings.

(Doc. No. 1 at 29.)

On November 18, 2016, Plaintiff initiated this instant action seeking a declaratory judgment and a writ of mandamus against Defendants.[6] (Doc. No. 1.) Specifically, Plaintiff requests the Court to find the denial of his EAD application by Defendants to be arbitrary and capricious, and to issue a permanent injunction ordering Defendant USCIS to adjudicate his EAD application in accordance with a previous decision issued by the Administrative Appeals Office ("AAO") of Defendant USCIS. On January 27, 2017, Defendants filed their Answer. (Doc. No. 5.) On March 22, 2017, following a pretrial conference, the Court ordered Defendants to serve the full administrative record upon Plaintiff's counsel and also to deliver the record to the Court by April 21, 2017, which they did. (Doc. No. 11.) The Court also ordered the parties to file cross-motions for judgment on the administrative record by June 23, 2017. (Id.) The parties filed Motions for Summary Judgment in compliance with the Court's March 22, 2017 Order. (Doc. Nos. 13, 14.)

---

[4] "Clock" refers to the mandatory 180-day period that must pass between the filing of an asylum application and the filing of an employment authorization application.

[5] This 180-day period is commonly referred to as the "EAD clock."

[6] At the time of this Opinion, Plaintiff's legal status is considered to be that of an alien in removal proceedings without a final order of removal. (Tr. of Mot. to Dismiss Hr'g, 14:21-23.)

4

In his Motion for Summary Judgment, Plaintiff claims that he was not given notice that the administrative closure of his removal proceedings would stop his EAD clock and that he would therefore remain ineligible for employment authorization. (Id. ¶ 16.) He contests the denial of his EAD application as arbitrary and capricious, in violation of the APA. (Id. ¶ 18.) Plaintiff also argues that Defendants violated his right under the Due Process Clause of the Fifth Amendment when he was allegedly deprived of a meaningful opportunity to raise a challenge to the EAD clock computation. (Id.)

In contrast, Defendants argue that their decision to deny Plaintiff's application for employment authorization was not arbitrary and capricious. They assert that the denial of the application should be upheld based upon the administrative record showing that Plaintiff caused the delay of his removal proceedings, stopping his 180-day EAD clock. In support of their Motion for Summary Judgment, Defendants rely upon the language and purpose of 8 C.F.R. § 274a.12(c)(8), as well as publicly-available guidance on the 180-day computation. (Doc. No. 14 at 11.)

### III. JURISDICTION OF THE COURT

A district court has jurisdiction to review an agency's determination of an individual's employment authorization eligibility under 28 U.S.C. § 1331 and the APA only if certain aspects of the agency's decision are met. Pinho v. Gonzales, 432 F.3d 193, 200 (3d Cir. 2005). The agency action: (1) must be final; (2) must adversely affect the party seeking review of the decision; and (3) must be non-discretionary. Id. An agency action is deemed to be "final" based on two findings: (1) the action marks the "consummation of the agency's decision-making process," and (2) the action is one "from which legal consequences will flow." Bal v. Sessions, Civ. A. No. 16-5619, 2017 WL 5453040, at *2 (E.D. Pa. Nov. 17, 2017) (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997)).

## IV. STANDARD OF REVIEW

When reviewing an agency action under the APA, the district court is empowered only to set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. (citing 5 U.S.C. § 706(2)(A)). An agency "acts arbitrarily if it departs from its established precedents without announcing a principled reason for its decision." Valdiviezo-Galdamez v. Attorney Gen. of United States, 663 F.3d 582, 608 (3d Cir. 2011) (citing Johnson v. Ashcroft, 286 F.3d 696, 700 (3d Cir. 2002)). Accordingly, agencies are required to "examine the relevant data and articulate a satisfactory explanation for its action." Id. (citing Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983)).

A summary judgment motion is the proper mechanism to determine whether agency action was lawful because a district judge presides over such cases as an appellate tribunal. Uddin v. Mayorkas, 862 F. Supp. 2d 391, 399 (E.D. Pa., 2012) (citing Am. Bioscience, Inc. v. Thompson, 269 F. 3d 1077, 1083 (D.C. Cir. 2001)). Generally, granting summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)).

However, the instant case requires a different standard of review than the typical summary judgment motion because Plaintiff is seeking review under the APA. Uddin, 862 F. Supp. at 399 (citations omitted). In such a case, the Court looks to the administrative record and solely determines whether the agency action was arbitrary and capricious. Id. (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)). In doing so, the reviewing court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n. of U.S., Inc. 462 U.S. at 43 (citations omitted). The court, however, is not permitted to replace its own judgment for that of the agency in an APA review. NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 190 (3d Cir. 2006) (citing Motor Vehicle Mfrs. Ass'n. of U.S., Inc. 462 U.S. at 43).

## V. ANALYSIS

Plaintiff moves for summary judgment under the APA, arguing that Defendants' decision to deny his EAD application was arbitrary and capricious. (Doc. No. 13 at 18-19.) He further asserts that in failing to provide him with an opportunity to contest the computation of his EAD clock, Defendants violated his right to due process under the Fifth Amendment. (Id.) He also alleges that Defendants failed to abide by its own precedent, citing a September 6, 2013 decision of the Administrative Appeals Office ("AAO"). (Id.)

In contrast, Defendants claim that the administrative record and the applicable law support the denial of Plaintiff's employment authorization application. They submit that Plaintiff had not accrued the required 180 days after submitting an asylum petition and before filing an employment authorization application. (Doc. No. 14 at 11.) Defendants further contend that the mutually agreed upon administrative closure of Plaintiff's removal proceedings constituted an "applicant-caused delay" as defined under the applicable regulations, 8 C.F.R. § 208.7 (a)(2) and 8 C.F.R. § 1208.7(a)(2). (Id. at 7, 14.) According to Defendants, the EAD clock was paused and

7

Plaintiff simply did not acquire the sufficient amount of days to be considered eligible for an employment authorization document. Thus, his application was denied, and Defendants submit that the denial was proper and lawful under the governing regulatory language.

Although neither of the parties argued that this Court does not have subject matter jurisdiction to hear the case and proceeded on the assumption that it did, it is apparent based on review of the case law that the Court does not have jurisdiction to decide this case because the agency action to be reviewed is not final, which will be discussed further in this Opinion.

### A. This Court Does Not Have Subject Matter Jurisdiction to Adjudicate Defendants' Decision to Deny Plaintiff's Employment Authorization Application Under the APA

Neither of the parties dispute whether subject matter jurisdiction exists, but the Court is required to consider whether it in fact does exist. Soltane v. U.S. Dep't of Justice, 381 F.3d 143, 146 (3d Cir. 2004) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 543, 541 (1986)). As mentioned above, the Court can only adjudicate an agency action if (1) it was final; (2) it adversely affects the party seeking review of the decision; and (3) it was non-discretionary. Pinho v. Gonzales, 432 F.3d 193, 200 (3d Cir. 2005). Since the Court will find that the denial of Plaintiff's application for employment authorization was not a final decision, the Court lacks subject matter jurisdiction over this case.[7]

---

[7] In his Complaint, Plaintiff petitioned this Court to issue a writ of mandamus. (Doc. No. 1.) A court may issue a writ of mandamus to "aid" its jurisdiction "only if there is an independent basis for subject matter jurisdiction." In re Croitoru, Civ. A. No. 09-1675, 2009 WL 1040119, at *1 (3d Cir. 2009) (citing United States v. Christian, 660 F.2d 892, 894 (3d Cir. 1981)). Under 28 U.S.C. §1361, a district court is empowered to issue a writ of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, in this case, Plaintiff has not provided sufficient facts evidencing a duty owed by Defendants towards him. Furthermore, as explained in this Opinion, supra, Plaintiff has alternative means to obtain relief by seeking subsequent adjudication of his employment authorization application. Accordingly, the Court will not issue a writ of

### 1. The Agency Action Denying Plaintiff's Employment Authorization Is Not a Final Decision

The heart of this case lies in the agency action denying Plaintiff's employment authorization application. Defendants submit that Plaintiff's application was denied because the requisite 180 days between the filing of his asylum petition and the employment authorization application had not yet passed. In contrast, Plaintiff maintains that this action was arbitrary and capricious and that Defendants failed to provide him sufficient notice to contest the 180-day computation. Further underlying this dispute is how to treat the administrative closure of his removal proceedings before an immigration judge on September 2, 2015. Both parties agree that the closure did not terminate Plaintiff's asylum application and that it remains pending. (Tr. of Mot. to Dismiss Hr'g, 11:20-23.)

At the October 12, 2017 hearing on the cross-motions for summary judgment before this Court, Plaintiff's counsel stated that it was possible to reopen Plaintiff's case and seek a final adjudication on his removal proceedings:

| | |
|---|---|
| The Court: | Okay. Now the - - once there was a joint agreement on September 2nd, the asylum application was complete. It was over. Right? |
| Ms. Aristova[8]: | It is not entirely over, Your Honor. It is still pending before the Court. It's just neither the court nor the Government are expending any resources on the continued adjudication of this case. |
| The Court: | What court is it pending before? |
| Ms. Aristova: | Immigration Court in Philadelphia, Pennsylvania, Your Honor. |
| The Court: | Is that the - - is that the immigration judge you're - - |
| Ms. Aristova: | Yes. |

---

mandamus and will refrain from compelling Defendants to adjudicate Plaintiff's employment authorization application.

[8] Plaintiff's counsel is Tatiana S. Aristova, Esquire.

| The Court: | - - talking about? |
|---|---|
| Ms. Aristova: | Yes. It's Executive Office for Immigration Review. |
| The Court: | Wait a minute. If it's closed, how is it open? Explain that to me. |
| Ms. Aristova: | Well, there are two things that the judges - - immigration judges can do with - - with an immigration case, they could either terminate proceedings or they can administrative [sic] close proceedings. But proceedings are administrative [sic] closed, the case remains pending before the Court. My client is under continued obligation to inform the court of his address. If the judge terminated his proceedings, however, I would not be making this argument, but this is not what happened in this case. |

(Tr. of Mot. to Dismiss Hr'g, 11:19-12:22.)

| The Court: | And is there some way you can restart the clock, other than at this point? |
|---|---|
| Ms. Aristova: | The only way for us - - |
| The Court: | Can you reapply? |
| Ms. Aristova: | - - to restart - - |
| The Court: | Can you reapply? |
| Ms. Aristova: | - - the clock is to reopen the case and this is not what my client wants to do because it will be difficult for him to relitigate his case. He will need supporting documents from the country's registrant. Obtaining those documents may be difficult or even dangerous to him, so he would prefer that his case remain where it is right now. The only thing he's asking for is the right to work so he could be here legally and get decent wages. |

(Tr. of Mot. to Dismiss Hr'g, 13:10-23.)

At this juncture, the critical question is whether Plaintiff has the ability to challenge, or appeal the denial of his application. In order for a decision to be final, Plaintiff must show that he has exhausted his administrative remedies. See Pinho v. Gonzales, 432 F.3d 193, 200 (3d Cir. 2005) ("Finality requires exhaustion of administrative remedies."). Plaintiff has not

10

demonstrated exhaustion of recourse available to him. In fact, he concedes that there are steps he could take to obtain a final disposition of his case but declines to do so because of his limited resources. He maintains the opportunity to appear before the immigration judge to re-start his EAD clock and seek employment authorization while his asylum petition is pending. Moreover, the letter from Defendant USCIS denying Plaintiff's application provides as follows:

> NOTICE: USCIS regulations do not provide for an appeal to this decision. However, you may file a motion to reopen or reconsider an adverse decision. A motion must be filed using Form I-290B, Notice of Appeal or Motion. Form I-290B must be filed within 30 days from the date of this notice (33 days if this notice was received by mail) with the appropriate filing fee and other documentation in support of the motion . . . However, this denial is without prejudice to the filing of an Application for Employment Authorization under any category for which you may qualify.

(Doc. No. 1 at 30.)

This notice reveals that Plaintiff had the ability to file a motion to reopen or reconsider the denial of his application for employment authorization. Additionally, Defendant USCIS provides publicly available guidance for applicants who believe that there was an error in the calculation of time on their 180-Day Asylum EAD clock or an error in the adjudication of their application for employment authorization. The public information is as follows:

> **What if I think there is an error in the calculation of time on my 180-Day Asylum EAD Clock?**
>
> For questions regarding time accumulated on the 180-day Asylum EAD Clock when an applicant's asylum application is pending with an asylum office, please contact the 180-day Asylum EAD Clock point of contact at the asylum office with jurisdiction over the case. The points of contact can be found on the Asylum Division Web page at www.uscis.gov/Asylum under "Asylum Employment Authorization and Clock Contacts."
>
> For cases before EOIR, asylum applicants should address questions to the immigration judge during the hearing, or to the court administrator, in writing, after the hearing. Applicants **should not** file motions related to the 180-day Asylum EAD Clock. If an applicant believes the issue has not been correctly addressed at the immigration court level, the applicant may then contact the

Assistant Chief Immigration Judge for the appropriate immigration court in writing. For cases on appeal, applicants may contact EOIR's Office of General Counsel in writing. Please refer to OPPM 13-02 for more details.

**What if I think there is an error in the adjudication of my Form I-765, Application for Employment Authorization?**

USCIS service centers adjudicate the Form I-765. Applicants may contact a USCIS service center through the National Customer Service Center hotline at 1-800-375-5283. Inquiries that cannot be resolved by a customer service representative will be routed to the service center where the Form I-765 was filed. Applicants should receive a response from the service center within 30 days. If more than 30 days pass without a response, applicants may email the appropriate USCIS service center at one of the following address . . . .

(Doc. No. 14-1 at 4.)

Plaintiff had the opportunity to file a motion to reopen or reconsider the denial with Defendant USCIS within a thirty-day period. He has not done so. If he had filed such a motion, the denial would have been reviewed and therefore would not be considered a final decision. At this point, however, it has been well over thirty days since his application for employment authorization was denied. Nonetheless, Plaintiff still has the ability to administratively reopen his case and to appear before an immigration judge to seek employment authorization or to pursue the paths of recourse outlined above to have the action reviewed within the agency.[9] Therefore, the denial of Plaintiff's employment authorization application is not a final decision

---

[9] In his Motion for Summary Judgment (Doc. No. 13), Plaintiff relies heavily upon a non-precedential decision issued by the Administrative Appeals Office ("AAO") of Defendant USCIS dated September 6, 2013, where an allegedly similarly situated individual was granted employment authorization. (Doc. No. 13 ¶ 14.) In that decision, Defendant USCIS approved the application for employment authorization of an applicant who also had sought asylum. (Id. at 33.) The applicant had agreed to the administrative closing of her asylum application, but did so based upon the understanding that the applicant would continue to receive her previously granted work authorization. During that applicant's proceedings before the immigration judge, the USCIS attorney had stated on the record that he made "a notation in the Department [of Justice]'s computer system that the Department [of Justice] wanted for work authorization to continue." (Doc. No. 1 at 34.) This fact distinguishes the decision relied upon by Plaintiff from the facts of this case.

12

because he has the opportunity to seek subsequent review of his application.[10] Accordingly, judicial review is premature in this case as this Court lacks subject matter jurisdiction and will dismiss the claims arising under the APA pursuant to Federal Rule of Civil Procedure 12(h)(3).

### 2. Even if the Agency Action Denying Plaintiff's Employment Authorization Was a Final Decision, the Action Will Be Upheld Because It Was Not Arbitrary and Capricious

Defendants submit that they denied Plaintiff's employment authorization application because he had not accrued the mandatory 180 days between submitting his asylum application on May 6, 2015 and submitting his employment authorization application on July 14, 2016 because the "EAD clock" had stopped on September 2, 2015. It was stopped on September 2, 2015 when his removal proceedings were administratively closed, upon joint request of the parties. Though the "EAD clock" had begun to run on May 6, 2015, the closure on September 2, 2015, Defendants argue, is considered an "applicant-caused delay," which is further explained below. For these reasons, the agency decision will be upheld because it was not arbitrary and capricious.

#### i. Plaintiff Caused the Delay of His EAD Clock When He Agreed to Administratively Close His Removal Proceedings

Plaintiff asserts that he did not cause the delay of the EAD clock but "rather [the stop] is the result of a joint action and agreement of the DHS trial attorney, the Plaintiff, and the EOIR." (Id.) Plaintiff's counsel asserted that "the Government actually offered [Plaintiff] to

---

[10] The Court notes the remaining Pinho factors it must consider to determine jurisdiction: the agency action must adversely affect the party and the agency action must be non-discretionary. 432 F.3d at 200. Here, the denial of Plaintiff's employment authorization application is undisputedly adverse to Plaintiff since he is deemed ineligible to work in the United States. Additionally, the action was non-discretionary because no discretion was involved in Defendant USCIS' decision since it merely computed the days between the filing of his Form I-589, the Application for Asylum and for Withholding of Removal and the filing of his Form I-765, the Application for Employment Authorization. However, because the agency action was not a final decision, the Court may not adjudicate it.

13

administratively close his case for the convenience of the Government, and [Plaintiff] agreed." (Tr. of Mot. to Dismiss Hr'g, 11:20-23.) In contrast, Defendants assert that because Plaintiff agreed to the closure, it constituted an "applicant-caused delay." Therefore, the required time period of 180 days had not taken place between the time he filed for asylum, on May 6, 2015, and the time he filed for employment authorization, on July 14, 2016, because the clock had stopped on September 2, 2015. In other words, he had only accrued 119 days and thus fell short of the 180-day requirement.

8 C.F.R. § 208.7 sets forth the procedure in which an individual who has applied for asylum can seek employment authorization in the United States. In pertinent part, it states:

(a) Application and approval.

(1) . . . Except in the case of an alien whose asylum application has been recommended for approval, or in the case of an alien who filed an asylum application prior to January 4, 1995, the application shall be submitted no earlier than 150 days after the date on which a complete asylum application submitted in accordance with §§ 208.3 and 208.4 has been received.

\*\*\*

If an asylum application is denied prior to a decision on the application for employment authorization, the application for employment authorization shall be denied. If the asylum application is not so denied, [United States Citizenship and Immigration Services] shall have 30 days from the date of filing of the request employment authorization to grant or deny that application, except that **no employment authorization shall be issued to an asylum applicant prior to the expiration of the 180-day period following the filing of the asylum application** filed on or after April 1, 1997.

(2) The time periods within which the alien may not apply for employment authorization and within which USCIS must respond to any such application and within which the asylum application must be adjudicated pursuant to section 208(d)(5)(A)(iii) of the Act shall begin when the alien has filed a complete asylum application in accordance with §§ 208.3 and 208.4. **Any delay requested or caused by the applicant shall not be counted as part of these time periods**, including delays caused by failure

14

> without good cause to follow the requirements for fingerprint processing. Such time periods shall also be extended by the equivalent of the time between issuance of a request for evidence pursuant to § 103.2(b)(8) of this chapter and the receipt of the applicant's response to such request.

8 C.F.R. § 208.7 (emphasis added).

Essentially, an asylum application must be adjudicated within 180 days after it has been filed. (Doc. No. 13 ¶ 20.) If an applicant causes a delay in the adjudication of his asylum application, the EAD clock is stopped. (Doc. No. 14-1 at 2.)

The Court is not persuaded that the administrative closure of Plaintiff's removal proceedings should not be considered an "applicant-caused delay." While Plaintiff may not have been the only party responsible for administratively closing the case, he still caused and consented to the closure of his removal proceedings. Doing so stopped the EAD clock after he had only accrued 119 days towards his employment authorization eligibility pursuant to 8 C.F.R. § 208.7. Section 208.7 expressly clarifies that any delay caused by the asylum applicant would not count towards the computation of the EAD clock. Defendants' explanation for the denial of Plaintiff's application is reasonable and supported by the plain language of the statute's text. Because Defendants' decision to deny Plaintiff's employment authorization application is supported by statutory language and is consistent with agency-issued guidance, it was not arbitrary and capricious.

### ii. The September 6, 2013 AAO Decision Is Not Binding Upon Defendants in Adjudicating Plaintiff's Employment Authorization Application

Plaintiff also heavily relies upon an AAO decision dated September 6, 2013, where an allegedly similarly situated individual was granted employment authorization. (Doc. No. 13 ¶ 14.) In that decision, Defendant USCIS approved an individual's application for employment authorization based on her claim to asylum. (Id. at 33.) He characterizes Defendants' denial of

15

his EAD application in departing from established precedent as effectively entering into "arbitrary and capricious" territory.

Plaintiff's characterization is inapposite. The cover letter of the decision expressly states: "This is a non-precedent decision. The AAO does not announce new constructions of law nor establish agency policy through non-precedent decisions." (Doc. 1 at 32.) Accordingly, this AAO decision should not be construed as official agency policy or guidance and this Court is not bound by this non-precedential case. Moreover, the applicant in the AAO decision had already received employment authorization when her case was administratively closed and her attorney requested, on the record, that the authorization continue. Therefore, as noted, the case also has distinguishable facts that do not support Plaintiff's contention that Defendants acted arbitrarily and capriciously.

### B. Plaintiff Has Not Sufficiently Pled a Fifth Amendment Due Process Violation

Plaintiff also argues that Defendants violated his Due Process right guaranteed to him by the Fifth Amendment to the United States Constitution.[11] He claims that he was deprived of the opportunity to apply for a benefit provided under law when his employment authorization document was denied without a chance to contest the decision. (Doc. No. 13 at 29.)

While aliens in the United States may not be deprived of liberty or property without due process, they first must possess a liberty or property interest. Hernandez v. Gonzales, 437 F.3d 341, 346 (3d Cir. 2006). The first step in a due process inquiry, then, is to determine whether Plaintiff was deprived of a protected interest due to some government action. Cospito v. Heckler, 742 F.2d 72, 80 (3d Cir. 1984).

---

[11] Plaintiff conflates the arguments he raises under the APA and the Fifth Amendment, supporting both claims with the same facts.

16

Here, Plaintiff characterizes his right to employment authorization as the alleged protected interest. Without further elucidation, Plaintiff claims that Defendants violated his due process right by depriving him of the ability to challenge their 180-day computation of the days between the date he filed his asylum petition and the date he filed his employment authorization application. However, the very nature of the application for employment authorization is that it will be accepted based on eligibility. In other words, the application itself does not confer a protected interest or right to work; it merely presents an applicant's eligibility to work. As explained above, he was not deprived of the ability to contest Defendants' calculation of the mandatory 180-day period. He was afforded the opportunity to re-open his case or file a motion to reconsider the denial. Therefore, no due process violation has been shown by Plaintiff.

## VI. CONCLUSION

For the reasons stated above, the Court will dismiss this case for lack of subject matter jurisdiction. Plaintiff's Motion for Summary Judgment (Doc. No. 13) will be denied, and Defendants' Motion for Summary Judgment (Doc. No. 14) will be granted. An appropriate Order follows.

ENT'D FEB 1 6 2019